# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL ORTIZ,<br><br>      Plaintiff,<br><br>v.<br><br>OFFICER SULLIVAN, et al.,<br><br>      Defendants. | CIVIL ACTION<br>NO. 4:17-cv-40143-TSH |

## ORDER AND
## REPORT AND RECOMMENDATION

**August 16, 2018**

Hennessy, M.J.

Plaintiff Michael Ortiz, at all relevant times a pre-trial detainee in custody of the Worcester County Sheriff's Office, filed the present action pursuant to 42 U.S.C. § 1983, alleging that Defendants Worcester County Sheriff Lewis Evangelidis ("Evangelidis"),[1] Lieutenant Dan Mara ("Mara"), Sergeant Michael O'Neill ("O'Neill"), and Officer Corey Sullivan ("Sullivan") violated his constitutional rights while he was incarcerated. Plaintiff alleges Mara, O'Neill, and Sullivan subjected him to excessive force in violation of the Fourth and Fourteenth Amendments; he has sued Evangelidis under a theory of supervisory liability; and he has brought Massachusetts state-law assault and battery claims against Mara, O'Neill, and Sullivan.

---

[1] Plaintiff spells this defendant's name "Evangelitis." According to the Worcester County Sheriff's Office website, the correct spelling is "Evangelidis." See Mission, Worcester County Sheriff's Office, https://worcestercountysheriff.com/about/mission/ (last visited Aug. 16, 2018). The Court will refer to him as "Evangelidis."

1

Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), docket #15, and Plaintiff has moved for appointment of counsel, docket #11. District Judge Hillman referred both motions to me, the former for a report and recommendation, and the latter for a ruling. See docket #17. Lastly, Plaintiff's opposition to the motion to dismiss contains a request that I recommend be construed as a motion to amend the complaint. See docket #16 ¶ 11.

For the reasons that follow, I RECOMMEND that Respondent's motion to dismiss be DENIED as to Defendants Mara, O'Neill, and Sullivan and GRANTED as to Defendant Evangelidis. I RECOMMEND that Plaintiff's motion to amend the complaint be DENIED WITHOUT PREJUDICE. Finally, I DENY WITHOUT PREJUDICE Petitioner's motion for appointment of counsel.

I.  BACKGROUND

Plaintiff's complaint, docket #5, alleges that on September 25, 2017, Plaintiff was placed on intensive mental health status at the Worcester County Jail due to suicidal ideation. Id. ¶ 7-8. Two days later, on September 27, 2017, Plaintiff told Defendant Sullivan he was having suicidal thoughts and requested mental health care. Id. ¶ 9. Sullivan responded, "Kill yourself." Id. ¶ 10. Plaintiff then began throwing urine onto the walls of his cell and on himself. Id. ¶ 11. Sullivan responded by taunting Plaintiff and suggesting that Plaintiff "cover [his] camera," referring to a camera monitoring Plaintiff's cell. Id. ¶ 12. Plaintiff covered the camera and a window into his cell, stating he would not uncover them until he had seen a mental health staff member. Id. ¶ 13.

Approximately fifteen minutes later, officers came to the door of Plaintiff's cell and told him that if he did not uncover his cell window, "he was going to have a bad day." Id. ¶ 14.

Plaintiff responded by again asking to see a mental health staff member. Id. ¶ 15. Mara, O'Neill, and Sullivan then entered Plaintiff's cell with a shield.[2] Id. ¶ 16-17. Sullivan, carrying the shield, pinned Plaintiff to the wall, and O'Neill and Mara punched Plaintiff repeatedly in the face and head from either side of the shield. Id. ¶ 17-18. Next, Defendants "subdued" Plaintiff, brought him to the ground, and handcuffed his hands behind his back. Id. ¶ 19. Sullivan then placed the shield on Plaintiff's bed, knelt on Plaintiff's neck, and began kneeing him in the eye and forehead while yelling, "Stop resisting." Id. ¶ 20. Plaintiff was raised to his feet, at which point he called Sullivan a "piece of shit." Id. ¶ 21. Sullivan replied, "You want to throw urine like an animal[,] we're going to treat you like an animal." Id. ¶ 22.

After the incident, Plaintiff was taken to UMass Trauma Center for emergency medical care including a CT scan and a consultation to rule out eye surgery. Id. ¶ 27. He suffered a ruptured eye socket, concussion, bloody nose, and bruising on his forehead and body. Id. ¶ 32.

The complaint alleges that after the incident, prison officials "fail[ed] to provide grievances" to Plaintiff, and "fail[ed] to answer grievance appeals . . . which were wr[itten] on paper and submitted [via the] in[-]house mail system . . . ." Id. ¶ 24. Plaintiff also alleges generally that he "has exhausted his administrative remedies with respect to all claims . . . ." Id. ¶ 46.

The complaint contains the following language concerning Defendant Evangelidis:

The defendant Sheriff Evangeli[d]is[,] who failed to train or supervise senior officer Lt. Mara and the other officers [i]nvolved, and his failure to adopt policies to respond to a well[-]known pattern of violence by his officers toward detainees, is causally connected to the violation of the plaintiff's rights. This failure to train or supervise or adopt policy has resulted in a dangerous recklessness by [the] policy maker, and with that knowle[d]ge his subordinates abandoned their constitutional duties to protect the plaintiff under governmental control. [The] [p]olicy maker's recklessness thus affected the balance of "equities" between the mental health detainee and the Government [that] exercises such control. This

---
[2] Another individual, referred to as "non-defendant [H]arrison," also entered Plaintiff's cell. Docket #5 ¶ 16.

3

> abandon[]ment of responsibility by the officers involved as [a] result of [the] policy maker's failure to act constitutes deliberate indifference to the plaintiff's constitutional rights. Sheriff Evangeli[d]is'[s] failure to act contributed to and proximately caused the above-d[e]scribed violation of the fourth amendment, violating the plaintiff[']s civil right[s] under 42 USC § 1983 [and U.S.] Const. Amend. 4, 14.

Id. ¶ 42.

In lieu of answering the complaint, Defendants filed the instant Rule 12(b)(6) motion to dismiss, arguing that Plaintiff failed to exhaust his administrative remedies within the prison grievance system before filing this case. See docket #15 at 3. In support of dismissal, Defendants submitted an affidavit of Detective Daniel Melhouse, Inmate Grievance Coordinator at the Worcester County Sheriff's Office, averring that Plaintiff never filed a grievance related to the September 27 incident. Docket #15-1. Plaintiff requests in his opposition to dismissal that the Court "add [Detective] Mellhouse [sic] to this complaint due to his position of detective/special service[s] officer." Docket #16 ¶ 11.

Defendants also moved to dismiss the complaint as to Evangelidis on the ground that, as a supervisor, he cannot be held liable in this section 1983 action under a respondeat superior theory of liability alone. Docket #15 at 4-5.

Separately, Plaintiff has moved for appointment of counsel. Docket #11. Defendants have not opposed that motion.

II.  RULE 12(b)(6) STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The plaintiff's complaint must present a claim "that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Dismissal is appropriate if the plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms. LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotation and alterations omitted).

Though most Rule 12(b)(6) motions "are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006) (citations omitted). "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitely ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004) (citing In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003)). Put another way, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." Jones v. Bock, 549 U.S. 199, 212 (2007) (quoting Leveto v. Lapina, 258 F.3d 156, 161 (3rd Cir. 2001)) (citations omitted).

Generally, a complaint filed pro se is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Estelle v. Gamble, 429 U.S. 97, 106 (1976)

5

(quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). This does not mean pro se plaintiffs need not plead basic facts sufficient to state a claim, but it does afford pro se plaintiffs additional leniency when facing a motion to dismiss. See Ferranti v. Moran, 618 F.2d 888, 890 (1st Cir. 1980) (citation omitted).

III. MOTION TO DISMISS: DEFENDANTS MARA, O'NEILL, AND SULLIVAN

Defendants' move to dismiss the complaint as to Defendants Mara, O'Neill, and Sullivan on the ground that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e (the "PLRA"). That statute provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Acosta v. U.S. Marshals Serv., 445 F.3d 509, 512 (1st Cir. 2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002)). "This exhaustion requirement applies to allegations of physical violence by prison guards." Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 11 (1st Cir. 2010) (citing Porter v. Nussle, 534 U.S. 516, 532 (2002)). The reason for the requirement is "to reduce the quantity and improve the quality of prisoner suits" and to give prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 524-25. An unexhausted claim is subject to dismissal. See Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

A complaint need not allege that a plaintiff has exhausted administrative remedies under the PLRA. See Jones, 549 U.S. at 216. Rather, a plaintiff's failure to exhaust administrative

remedies under the PLRA is an affirmative defense, and thus "must be raised and proved by the defense." Cruz Berrios, 630 F.3d at 11 (citing Jones, 549 U.S. at 216).

By its terms, the PLRA requires a prisoner plaintiff to exhaust only administrative remedies that "are available." 42 U.S.C. § 1997e(a). A prison grievance process is not "available" for purposes of this exhaustion requirement if prison officials refuse to provide a grievance form upon request, or fail to respond to a grievance that is properly filed. See, e.g., Ojo v. Medic, No. 11-cv-210-JL, 2012 WL 7150497, at *4-6 (D.N.H. Dec. 17, 2012) (surveying Circuit Court precedent), report and recommendation adopted, 2013 WL 593485 (D.N.H. Feb. 14, 2013).

Defendants argue that Plaintiff failed to exhaust administrative remedies through the prison grievance system, rendering his claims subject to dismissal. See docket #15 at 3. I reject that argument. Because the PLRA's exhaustion requirement gives rise to an affirmative defense, Plaintiff's alleged failure to exhaust administrative remedies cannot be grounds for dismissal unless the properly considered facts "suffice to establish" such failure "with certitude." Rodi, 389 F.3d at 12 (citation omitted). This requirement is not satisfied here: the complaint alleges that Defendants "fail[ed] to provide grievances," and "failed to answer grievance appeals . . . which were wr[itten] on paper and submitted [via the] in[-]house mail system. . . ."[3] Docket #5 ¶ 24. In light of these factual allegations—which must be credited as true for purposes of the instant motion to dismiss—it is plausible that the prison grievance system was not "available" to Plaintiff, as required for the PLRA's exhaustion requirement to apply. Cf. Ojo, 2012 WL 7150497, at *4-6. Accordingly, it cannot now be said "with certitude" that Plaintiff failed to exhaust available administrative remedies. Rodi, 389 F.3d at 12 (citation

---

[3] For purposes of the instant motion, I have not considered allegations contained in Plaintiff's opposition brief.

7

omitted). I therefore recommend that the motion to dismiss be denied as to Mara, O'Neill, and Sullivan.[4]

IV.     MOTION TO DISMISS: DEFENDANT EVANGELIDIS

Defendants argue that Plaintiff's claim against Defendant Evangelidis should be dismissed because Plaintiff has failed to allege a viable supervisory liability claim. See docket #15 at 4-5. I agree and recommend that the motion to dismiss as to Evangelidis be granted.

"Section 1983 does not impose purely supervisory liability; it aims at 'persons who have actually abused their positions of authority,' and hence 'only persons who were directly involved in the wrongdoing may be held liable.'" Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 41 (1st Cir. 2007) (first quoting Rizzo v. Goode, 423 U.S. 362, 375-77 (1976), then quoting Kostka v. Hogg, 560 F.2d 37, 39 (1st Cir. 1977)). An exception to this rule provides that a supervisor can be held liable for a subordinate's act if the plaintiff can show that the supervisor's "action or inaction was affirmatively linked to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence[,] or gross negligence amounting to deliberate indifference." Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988) (quotations, alterations, and emphasis omitted). This is a demanding standard. Martinez-Velez, 506 F.3d at 41 n.5 (citing Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997)). "[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994) (citations omitted).

---

[4] Because I reject Defendants' argument concerning the PLRA's exhaustion requirement, I decline to address whether that requirement applies to Plaintiff's state-law assault and battery claims. Judges in this District have declined to apply the PLRA's exhaustion requirement to state-law claims. See Shaheed-Muhammad v. DiPaolo, 393 F. Supp. 2d 80, 92 n.5 (D. Mass. 2005); see also Ramos v. Flynn, No. 06-cv-10645-GAO, 2009 WL 2207191, at *10, 13 (D. Mass. July 22, 2009) (applying Massachusetts exhaustion law, not the PLRA, to a prisoner's state-law claim against prison officials). Thus, I recommend that Plaintiff's assault and battery claims survive the motion to dismiss.

8

The complaint does not allege that Evangelidis was present during the September 27 incident. Accordingly, Plaintiff must "affirmatively link[]" Evangelidis's conduct to a subordinate's violative act or omission. Lipsett, 864 F.2d at 902 (quotation and alteration omitted). Here, the complaint's only paragraph referencing Evangelidis alleges in general terms, with no supporting facts, that he failed to train or supervise officers and failed to respond to a well-known pattern of violence against inmates. Docket #5 ¶ 42. The complaint further states that those alleged failures are "causally connected to the violation of the plaintiff's rights," amount to "dangerous recklessness," and caused "deliberate indifference to the plaintiff's constitutional rights." Id.

This categorical language amounts to bare legal conclusions not properly credited when deciding a Rule 12(b)(6) motion to dismiss. See Iqbal, 556 U.S. at 678. Absent are any plausible factual allegations supporting the legal assertion that Evangelidis's acts or omissions and Mara, O'Neill, or Sullivan's conduct are affirmatively linked—for example, an allegation that a specific form of training or supervision was lacking; or that Evangelidis, by a specific act or omission, encouraged, condoned, or acquiesced in Mara, O'Neill, or Sullivan's conduct; or factual allegations evidencing "a well[-]known pattern of violence by [Evangelidis's] officers toward detainees," docket #5 ¶ 42. Accordingly, I recommend that the motion to dismiss as to Evangelidis be granted.

V. MOTION FOR LEAVE TO AMEND THE COMPLAINT

In his opposition to the motion to dismiss, Plaintiff requests that Detective Daniel Melhouse be added as a defendant in this action. See docket #16 ¶ 11. According to an affidavit in support of dismissal, Melhouse is a "Detective/Correctional Officer" in the Worcester County Sheriff's Office's Special Services Investigative Division. Docket #15-1 ¶ 1. Melhouse's

9

affidavit avers that he also serves as Inmate Grievance Coordinator, and in that capacity "oversee[s] all inmate grievances including the database and internal filing system which tracks all inmate grievances at the [Worcester County Sheriff's Office]." Id. ¶ 2.

Liberally construing Plaintiff's pro se filing, see Estelle, 429 U.S. at 106, I recommend that the Court treat Plaintiff's request to add Melhouse as a motion to amend the complaint, and that the motion be denied without prejudice. Plaintiff should comply with Federal Rule of Civil Procedure 15 and Local Rule 15.1, and file with the Court a proposed amended complaint that includes specific allegations against Melhouse, in accordance with Federal Rule of Civil Procedure 8.

VI. MOTION FOR APPOINTMENT OF COUNSEL

Finally, Plaintiff moves for appointment of counsel. "The court may request an attorney to represent any person unable to afford counsel" in a civil case.[5] 28 U.S.C. §1915(e)(1). The decision whether to appoint pro bono counsel lies within the District Court's sound discretion. See Cookish v. Cunningham, 787 F. 2d 1, 2 (1st Cir. 1986). "The threshold question is whether there are merits to the indigent litigant's claim." Childs v. Duckworth, 705 F.2d 915, 922 (7th Cir. 1983). Other salient factors include the litigant's ability to present the case; the complexity of the legal and factual issues; the litigant's ability to investigate disputed facts; and whether the evidence may involve conflicting testimony, requiring cross-examination by a lawyer. See id.

I decline to appoint counsel to represent Plaintiff at this time. As an initial matter, there is potential merit to Plaintiff's claims; so appointing an attorney to represent him would not be futile. That said, Plaintiff has shown the ability to present his case. The complaint is well-written in complete sentences, and reflects an ability to communicate. Its citations demonstrate

---

[5] Judge Hillman has determined that Plaintiff is indigent. See docket #8 (granting Plaintiff's IFP motion).

familiarity with relevant case law and the ability to use legal authority to support arguments and claims. At the same time, the complaint contains a short and plain statement of Plaintiff's claims. Indeed, Defendants do not seek dismissal as to those allegedly involved directly in the September 27 incident on the ground that the complaint's facts are inadequately set forth. Plaintiff also is able to distinguish among alleged tortfeasors, bringing no claim against an officer who entered his cell, but against whom there is no allegation of excessive force. See docket #5 ¶ 16. Moreover, the complaint reflects Plaintiff's understanding of other legal concepts implicated in this case, including state action, excessive force, and exhaustion of administrative remedies.

Similarly, Plaintiff's opposition to the motion to dismiss, docket #16, is well-focused on a key issue—whether Plaintiff exhausted administrative remedies under the PLRA. The opposition recites a number of steps Plaintiff took to exhaust remedies, and, consistent with allegations in the complaint, alleges that prison officials interfered with and frustrated his ability to access the prison grievance system. It specifically identifies prison officials who allegedly denied Plaintiff grievance forms, and dates on which Plaintiff allegedly sent in-house mail requesting grievance forms. See id. ¶¶ 4-5; see also id. ¶¶ 2-3.

I also find that the lack of complexity of the issues supports denying the motion. The main issues litigated thus far are excessive force and exhaustion of remedies; as noted, Plaintiff's filings show he understands those issues and is able to litigate them. Nor does it currently appear that Plaintiff is unable to investigate factual issues under dispute, or that the case will require cross-examination beyond Plaintiff's abilities.

Accordingly, I deny the motion to appoint counsel without prejudice to refile if, at a future time, Plaintiff becomes unable to adequately represent himself in this action.

## Conclusion

I RECOMMEND that Respondent's motion to dismiss, docket #15, be DENIED as to Defendants Mara, O'Neill, and Sullivan and GRANTED as to Defendant Evangelidis; and I RECOMMEND that Plaintiff's motion to amend the complaint, see docket #16 ¶ 11, be DENIED WITHOUT PREJUDICE.[6]

Further, I ORDER that Petitioner's motion for appointment of counsel, docket #11, is DENIED WITHOUT PREJUDICE.

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[6] The parties are notified that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portions of the proposed findings, recommendations, or report to which objection is made, and the basis for each objection. See Fed. R. Civ. P. 72(b)(2). The U.S. Court of Appeals for the First Circuit has repeatedly indicated that failure to comply with this rule waives the right to review of this Report and Recommendation in the District Court and precludes appellate review of the District Court's order based on this Report and Recommendation. E.g., Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017) (citation omitted); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016) (citations omitted); see also Thomas v. Arn, 474 U.S. 140 (1985).