UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL ORTIZ,<br>    **Plaintiff,**<br><br> v.<br><br><br>LT. MARA, SERGEANT O'NEILL, and<br>OFFICER SULLIVAN,<br>    **Defendants,** | )<br>)<br>)<br>)<br>)   CIVIL ACTION<br>)   NO. 17-40143-TSH<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OF DECISION AND ORDER
**January 28, 2020**

**HILLMAN, D.J.**

### Background

Michael Ortiz ("Ortiz" or "Plaintiff") has filed a federal civil rights claim against Lt.. Dan Mara. ("Mara"), Sergeant Michael O'Neill ("O'Neill"), and Officer Corey Sullivan ("Sullivan" and, collectively with Mara and O'Neill, "Defedants")[1] under 42 U.S.C. §1983 alleging they violated his Constitutional right to be free from use of excessive force against him when he was incarcerated at the Worcester County Sherrif's Office ("WCSO"). Ortiz has also asserted Massachusetts state law claims against these Defendants for assuault and battery

This Memorandum of Decision addresses Plaintiff's Motion for Leave to File an Ameded Complaint (Docket No. 48), Plaintiff's Motion for Summary Judgment (Docket No. 50), and

---

[1] Ortiz also named Sherriff Lewis Evangelidis ("Sherriff Evangelidis") in his compliant. This Court dismissed the claims against Sherriff Evangelidis on September 7, 2018.

Defendants' Motion for Summary Judgment (Docket No. 52). For the reasons set for the below, Plaintiff's motion to amend his Complaint and his motion for summary judgment are *denied*. The Defendants' motion for summary judgmnet is *granted*.

## THE MOTION TO AMEND THE COMPLAINT

Pursuant to the Scheduling Order (Docket No. 30), amendments to pleadings were required to be filed by February 22, 2019. Plaintiff filed a motion to amend his complaint to add a claim for attorney's fees on January 14, 2019— that motion was denied. On May 13, 2019, the parties appeared before the Court for a status conference and stated that discovery was completed. On June 14, 2019, simultaneous with filng his motion for summary judgmnet, Ortiz filed a motion to further amend his complaint to add three additional parties, Ryan Kasik ("Kasik"), Christopher Harrison ("Harrison") and Frank McDonald ("McDonald").  As to Harrison, Ortiz asserts that although he referenced him in his original complaint, he did not become aware that took part in the asaault until he reviewed reports during the course of discovery. As to Kasik and McDonald, Ortiz simply avers that "there is merit to add these officers as defendants to Complaint do [sic] to the identity and actions of these officers."

Under this Court's rules of procedure, permission to amend a complaint is to be "freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). "This liberal amendment policy applies unless the plaintiff exhibited bad faith, undue delay, the amendment would work undue prejudice on the opposing party or be futile." *Weinberg v. Grand Circle Travel, LCC,* 891 F. Supp. 2d 228, 236 (D.Mass. 2012). However, where a plaintiff seeks to amend his complaint beyond the time provided in the scheduling order, he must also establish good cause for an extension of the court mandated deadline. *See Cruz v. Bristol-Myers Squibb Co., PR*, 699 F.3d 563, 569 (1st Cir.

2012)(because motions to amend came after deadline established by district court's scheduling order, they could be granted only upon showing of good cause).   Moreover, an amendment adding parties must be sought "as soon as [the party] reasonably can be expected to have become aware of the identity of the proposed new party" and the motion *must* be served "upon the proposed new party at least 14 days in advance of fling the motion, together with a separate document stating the date on which the motion will be filed." LR, D.Mass. 15.1(a) and (b).

In this case, Ortiz has not complied with Local Rule 15.1 and for that reason alone, his motion to amend must be denied. Additionally, Ortiz acknowledged at the status conference a month before he sought to amend his pleading that discovery was completed. At that time, he was in possession of the factual basis for his claims against the newly proposed defendants. Yet he did not inform the court and the Defendants that he would be seeking to further amend his complaint to add new parties, nor did he request that the time for filing amendments to the pleadings be extended. He the waited an additional month before filing his motion. Under these circumstances, he has failed to establish good cause to amend the scheduling order. Finally, given that Plaintiff filed his motion to add the proposed defendants simultaneously with his filing a motion seeking summary judgment on his claims against then, I find that Kasik, Harrison, McDonald and the currently named Defendants would be severely prejudiced if the motion were allowed. For these reasons, the motion to amend is *denied.*

## **THE CROSS-MOTIONS FOR SUMMRY JUDGMENT**

### **Standard of Review**

Summary judgment shall be granted if the moving party shows, based on the materials in the record, "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute precludes summary judgment if it is both "genuine" and "material." *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986). An issue is "genuine" when the evidence is such that a reasonable factfinder could resolve the point in favor of the non-moving party. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir. 1994). A fact is "material" when it might affect the outcome of the suit under the applicable law. *Id.*

The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1968). It can meet this burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (citation to quoted case omitted). Once the moving party shows the absence of any disputed material fact, the burden shifts to the non-moving party to place at least one material fact into dispute. *See Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex,* 477 U.S. at 325). When ruling on a motion for summary judgment, "the court must view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Scanlon v. Dep't of Army*, 277 F.3d 598, 600 (1st Cir. 2002). However, the court

should not "credit bald assertions, empty conclusions, rank conjecture, or vitriolic invective." *Caban Hernandez v. Philip Morris USA, Inc*., 486 F.3d 1, 8 (1st Cir. 2007)). "Cross-motions for summary judgment require the district court to 'consider each motion separately, drawing all inferences in favor of each non-moving party in turn.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st Cir. 2014)(citation to quoted case omitted).

## Facts

### Local Rule 56.1; Defendant's Facts Deemed Admitted

This Court's Local Rules provide that a motion for summary judgment "shall include a concise statement of the material facts of record as to which there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation … A party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation …. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties." LR.D.Mass. 56.1.

Although Ortiz is proceeding pro se, he is required to comply with this Court's procedural rules. Therefore, in support of his motion for summary judgment, he was required to file a Rule 56.1 statement setting forth the facts which he contends there are no genuine issue to be tried and in his opposition, he was required to include a concise statement of those facts which he contends there exists a genuine issue to be tried. In both instances, he was required to cite page references to affidavits, depositions and other documentation in support thereof. However,

in support of his motion, Ortiz has included a "Statement of Facts" setting forth his version of the underlying events. As to most of the facts, Ortiz does not cite to supporting documentation in the record. When he does cite to supporting documentation, Ortiz makes a general reference rather than citing to specific pages.   The Defendants included a Statement of Undisputed Material Facts, citing to exhibits and other documentation in the record in support. In his opposition, for the most part, Ortiz does not cite to facts which he contends that there is a genuine issue to be tried, rather he asserts facts which support his claims and in doing so, again does not cite to any documentation in the record. Accordingly, the Court may deem the Defendants' statement of material facts admitted by Ortiz. *See Strahan v. Diodati*, 755 F. Supp. 2d 318, 324 (D. Mass. 2010)(where pro se plaintiff failed to submit required concise statement of material facts as to which there exists genuine issue to be tried pursuant to L.R., 56.1, material facts set forth in defendants' motion for summary judgment are deemed admitted).   Nonetheless, the Court will accept those facts asserted by the Plaintiff to which he has properly cited to the record and which are supported by such supporting documentation.   Additionally, the Court will accept those facts which the Defendants do not dispute. Finally, while not in proper format, because Ortiz's memorandum in support and his opposition are signed under pains and penalties of perjury, the Court has considered factual assertions made by Ortiz therein which are based on his personal knowledge.

The Incident

On September 25, 2017, Ortiz was placed in the custody of the Worcester County jail. According to Ortiz, he was a heroin addict who, at the time, was detoxing. He was placed in a segregation unit and was being monitored as a suicide risk. On September 27, 2017, he asked to

speak to a mental health worker and Sullivan told him to kill himself. Ortiz then began to throw toilet water around the cell and, using a milk carton threw it on himself. He asserts that he covered his cell camera and window after another derogatory comment by Sullivan who suggested that he take such action. After Ortiz covered his cell camera/window, Sullivan called for help and told those officers who responded that he was in his cell hurting himself. The staff who responded told Ortiz that if he didn't uncover his cell/camera, he was going to have a bad day. Ortiz stated he would take the covering off, but first wanted to talk to a mental health specialist and the captain first. At that point, officers entered his cell; Sullivan came through first carrying a shield. When the officers came through, Ortiz got on the floor and lay in a fetal position with his hands covering his face. He was punched, kicked and handcuffed behind his back.  Sullivan then placed the shield on the bed and started kneeing Ortiz on his back and head and told him to stop resisting—he kneed his eye and forehead. He was then brought to his feet at which time he yelled at Sullivan that he was a piece of shit. Sullivan responded that if he was going to act like an animal throwing urine around his room, he was going to be treated as an animal.

Ortiz was put into a restraint chair while awaiting medical personnel to arrive to treat his injuries. The nurse practitioner noted that Ortiz had been involved in a use of force incident and suffered abrasions and contusions to his face, including trauma to his nose and left eye. The report did not indicate how Ortiz sustained the injuries. A similar, but less detailed report prepared by the nurse who attended Ortiz also noted that he has suffered head and facial injuries in a use of force incident. Both reports indicated that once it was determined that Ortiz was compliant with security, he would be released from the human restraint chair and transferred by

ambulance to the hospital. The nurse's report indicates that approximately 30 minutes after first being seen by medical personnel, Ortiz was transported to the emergency room.

Ortiz asserts that there is conflict among the reports prepared by the Defendants and other responding officers. More specifically, Sullivan states that he observed Ortiz hitting his head against the wall while the other officers state that he had covered the observation camera and window after throwing urine around the cell and drinking it. Therefore, Sullivan could not have observed him hitting his head. Additionally, Ortiz alleges that Sullivan states that the time he saw him hitting his head against the wall was 1:20 p.m. and that's when he covered his cell camera and window whereas the other officers say it was around 1:50 p.m. that they saw him banging his head on the wall. According to Mara's report, Ortiz was observed drinking urine from his toilet and dumping urine over his head and over the cell floor. Ortiz covered the camera in his cell, but his actions were observed through the cell window. Ortiz then placed a mattress up against the door so that the officers could not observe him through the window. When near the door, the officers heard noises which sounded like Ortiz hitting his head against the wall. Sullivan's report noted that Ortiz was observed drinking urine from his toilet at approximately 1:20 p.m. When asked to stop, he became visibly irate and covered the observation camera in his cell. He then started hitting his head against the wall. When ordered to stop, he covered the cell observation window with his mattress. Kasik's report states that Ortiz covered up the camera and window in his cell after being reprimanded for throwing urine on himself and then drinking it from a used milk carton. Harrison's report states that Ortiz had been pouring urine around himself and around his cell and banging his head on the wall; Harrison did not state whether he personally observed Ortiz's conduct. O'Neill came to the area

8

after being advised that Ortiz had covered his cell's observation camera and was drinking his own urine. O'Neill states that Ortiz started to hit his head against the wall and when he directed him to stop, Ortiz covered up his cell's window. None of the reports state what time Ortiz was observed covering up the camera and/or observation window.

Assistant Superintendent Trainor reviewed the incident reports and available video and concluded that the use of force against Ortiz was necessary and in accordance with applicable policy. He determined that no staff corrective action or training was required as a result of the incident.

<u>Post-Incident Actions: Ortiz's Exhaustion of Administrative Remedies</u>

At all times relevant to the events underlying this action, the WCSO had a policy which governed the filing of inmate grievances and inmate grievance appeals. For the calendar year 2017, the WCSO received and processed hundreds of inmate grievances, some of which were allowed.

In accordance with the WCSO policy, an inmate could obtain a grievance form from a Senior Shift Officer ("SSO") who holds the rank of Lieutenant. During his stay at the WCSO, Plaintiff has filed grievances arising out of his religious diet, out of his desire for a transfer to a difference facility as well as the handling of his legal mail.

At all times relevant to this civil action, Sullivan held the rank of Correctional Officer.   At all times relevant to this civil action, O'Neill held the rank of Sergeant. Mara did not work at the WCSO as SSO on the days immediately following the event underlying this action.   The WCSO has no record of Ortiz filing a grievance or grievance appeal arising out of the September 27, 2017 incident.

According to Ortiz, after returning to the WCSO from the hospital, he was placed on suicide watch for the remainder of the month of September and most of the month of October. While on suicide watch, inmates are not permitted pens in their cells. He asserts that during that period, he asked various corrections officers for grievance forms, including Mara, who was a lieutenant at the time. Sometime in late September/early October, Ortiz spoke with Special Service Officer and another from the mental health unit (he was handcuffed at the time due to his status). He described the incident and informed them he wanted to press criminal charges against them. He was told that criminal charges would not be pursued against the Defendants. Ortiz was transferred out of suicide watch in early or mid-November. At that time, he was allowed a pen and paper. He asserts that he obtained a grievance form after contacting Captain Anderson, filled out the form and put in in the prison mailbox. He received no response, so he wrote the prison superintendent about the incident and mailed it via in house mail. He also wrote the prison's special services and received no response.[2] The WCSO has no record of any grievance filed by Ortiz relating to the above described incident. Ortiz acknowledges that grievances must be filed within ten days and for that reason, his grievance even if received by prison authorities would have been denied.

## Discussion

Ortiz asserts that he is entitled to summary judgment because the undisputed evidence establishes, as a matter of law, that the Defendants used excessive force against him when they entered his prsion cell on September 27, 2017 in response to his throwing toilet water around his

---

[2] While I have set forth the substance of Ortiz's facts in support of his contention that he attempted to file a grievance, albeit untimely, he has not provided copies of any of the alleged completed grievance forms or the letters he allegedly mailed to the superintendent and prison special services.

cell, and covering his cell's camera/window. The Defendants seek summary judgment on the grounds that Ortiz is barred from seeking relief in this Court because he failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). If the Court finds that Ortiz's claims are exhausted, they argue his motion for summary judgment should be denied as there are disputed issues of material fact as to his excessive force and assault and battery claims, which preclude a finding that he is entitled to judgment as a matter of law. Because it is outcome determinative, the Court will first address Defendants' contention that Oritiz failed to exhaust his adinistrative remedies.

<u>Whether Ortiz Exhausted his Administrative Remedies</u>

The principles of administrative exhaustion provide "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51, 58 S.Ct. 459 (1938). Prisoners attempting to litigate their cases in court must comply with these exhaustion requirements. The PLRA provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378 (interpreting PLRA to require "proper exhaustion" thus "giv[ing] prisoners an effective incentive to make full use of the prison grievance process and accordingly provid[ing] prisons with a fair opportunity to correct their own errors"). "The term 'prison conditions' refers to 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' The Supreme Court has

11

further held that '[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective' .... Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.' " *Shaheed-Muhammad v. Dipaolo*, 393 F. Supp. 2d 80, 92 (D. Mass. 2005)(internal citations and citations to quoted cases omitted). At the same time, refusal of the prison staff to cooperate with the prisoner and does not follow the prison's written grievance procedures may constitute a violation of the prsioner's due process rights.

     Ortiz asserts that while he was on mental health watch for the rest of September and the month of October, he asked serveral officers for grievances, including Mara who was a lieutenant.  Other than Mara, Ortiz does identify any of the officers he allegedly asked for grievances. Additionally, Ortiz does not specificy *when* he made the alleged requests, that is, he does not assert that he requested the grievance form within ten calendar days as required by the applicable policy.  He does specifiy that in late September/early October he asked Officer Sable about filing criminal charges against the Defendants; he does not asssert that he asked Officer Sable to provide him with a grievance form during this period. Ortiz further alleges that when he was cleared from suicide watch and placed in another unit (in early to mid November) he was given a pen and paper. He then filled out a grievance and placed it in the prison mail. After not receiving a response, Ortiz alleges that he wrote the superintendent abourt the grievance issue and after he didn't get a response from the superintendent, wrote special services who also did not respond.  Howsever, Ortiz has not provided copies of any of these alleged communciations, nor has he described the substance of the alleged grievance or such communcations (other than to make a general statement that his letter to the superintendent dealt with the grievance and

12

excessive force issues). In any event, Ortiz acknowledges that the greivance he submitted in November was untimely since it was placed in the internal mail box more than ten days after the incident.

In this case, viewing the facts in a light most favorable to Ortiz, the undisputed facts establish as a matter of law that he failed to exhaust his administratve remeides because he failed to file a *timely* grievnce with prison authroities. As summarized above, Ortiz avers that while he was in segregation, he at some unspecified time requested grievance forms from one or more corrections officers. Such an assertion could create a disputed issue of fact as to whether the Defendants effectively deprived him of his right to file a timely grievance. Notably, however, Ortiz does not argue that he was effectively denied his right to file a grievance because he was not provided a grievance form while he remained in segration through the month of October. Instead, Ortiz argues that given the serious nature of his allegations and the significant injuries he suffered, this Court should find that he was exempt from having to exhaust his administrative remedies because of the nature of his claims, *i.e.,* he asserts that he has suffered severe injuries due to Defendants having use of excissive force against him. Ortiz cites no atuhority for the proposition that exhaustion of the PLRA may be excused becaue of the serious nature of plaintiff's claims. Accordingly, Defendants' motion for summary judgment is granted.[3]

## Conclusion

1. Plaintiff's Motion for Leave to File an Ameded Complaint (Docket No. 48) is ***denied***;

---

[3] Ortiz's motion for summary judgment is denied as moot. However, I want to make clear that the motion fails on its merits as there are a *numerous* disputed issues of material facts with regards to Ortiz's claims.

2. Plaintiff's Motion for Summary Judgment (Docket No. 50) is ***denied***; and

3. Defendants' Motion for Summary Judgment (Docket No. 52) is ***granted***.

Judgment shall enter for the Defendants.

/**s**/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**